OPINION
This appeal arises from a decision of the Carroll County Common Pleas Court finding in favor of Appellees, Purl and Ruth Ann Tinlin on their Amended Complaint and also in favor of Appellees as against Appellants, Robert and Karen White's counterclaim. For the reasons stated herein the trial court decision is hereby affirmed.
This matter arises from a dispute over the location of the boundary line dividing property owned by each of the parties. Appellees acquired title to 1.07 acres of land in 1960 and to an additional 3.75 acres in 1974. Appellees purchased both parcels from the same seller. Appellants acquired title to adjacent property in 1992. Prior to any parties' acquisition of their respective allotments, the predecessors in title to each parcel constructed a fence along the purported boundary line. Appellees allege that the predecessors in title agreed more than thirty years prior that this fence was constructed on the dividing line between the properties. Appellees claim that they relied on this agreement when they constructed a barn which they believed to be situated entirely on their own property. In July of 1992, Appellants had a survey done which revealed that the fence and Appellees' barn actually encroached onto Appellants' property.
On October 7, 1992, Appellants filed suit against Appellees seeking injunctive relief and damages and further seeking that the court order Appellees to remove the barn and the fence. However, the suit was dismissed without prejudice by joint stipulation of the parties.
On April 28, 1993, Appellees filed a complaint against Appellants seeking a declaratory judgment. Appellees alleged that Appellants removed the old fence and erected another along the boundary line as determined by their survey. Appellees requested that the court determine the boundary line and order Appellants to remove the new fence and relocate it either to the location of the old fence or to some other boundary line as the court may establish. Appellees also requested that the court restrain Appellants from harassing Appellees and that Appellants be ordered to remove the "No Trespassing" signs they allegedly placed upon the barn.
On June 28, 1993, with leave of the court, Appellants filed an answer and counterclaim to Appellees' complaint. In their answer, Appellants admitted that they agreed to dismiss their prior claim and that they removed the old fence and erected a new one based on their survey. Appellants also admitted that they constructed this fence against the barn and that they requested that Appellees keep their horses away from the fence. Appellants denied all other averments in the complaint.
In their counterclaim, Appellants alleged that the old fence was constructed without their permission or the permission of any predecessor in title. Appellants also alleged that no agreement existed that the old fence established the boundary between the properties. Appellants requested that the court adopt the boundary lines as determined by their survey and order that the barn, or that part of the barn encroaching on their property, be removed. Appellants also requested relief from alleged harassment and from interference with quiet enjoyment of their land, claiming that Appellees were dumping manure on to property claimed by Appellants. Appellees did not file an answer to Appellants' counterclaim.
On October 6, 1993, the parties filed an Agreed Judgment Entry granting Appellees leave to file an amended complaint and, importantly to the eventual outcome here, granting Appellants leave to file an amended answer and counterclaim. On that date, Appellees filed an amended complaint which alleged that the predecessors in title to all of the parcels had constructed the fence on what was then agreed to be the dividing line between the parcels and that the Appellees have owned at least a portion of their property in excess of thirty years. The amended complaint also alleged that the parties' predecessors in title recognized the old fence line as the accepted boundary between the properties for a period in excess of thirty years. Appellees also claimed that a survey conducted in July, 1992, revealed only slight variations from the accepted boundary line, including an irregularity of approximately five feet where the barn is located. The amended complaint further alleged that the new fence was constructed against the barn in a manner which denied Appellees access around their barn. Appellees requested that the court establish the rights of the parties with respect to the properties, that it establish a dividing line between the parcels, and provide any other necessary relief. Appellants did not answer the amended complaint within the statutory time period, as required in the Agreed Judgment Entry, filed October 6, 1993.
On November 3, 1993, the court filed a judgment entry, signed by counsel for both parties, stating that the parties had settled the matter and setting forth the terms of the settlement. The entry dismissed the case in its entirety with prejudice.
On February 3, 1995, Appellants notified the court in writing that they had neither authorized nor had any notice of the settlement. Appellants also alleged that the judgment entry was based upon fraudulent information which their attorneys provided to the court. Appellants subsequently retained new counsel and moved for relief from judgment under Civ.R. 60 (B)(5), which was denied by the trial court. Upon appeal to this Court, Tinlin v.White (May 15, 1996), Carroll App. No. 653 (Unreported), we reversed, finding that the lower court abused its discretion in denying Appellants' motion. This Court remanded the matter for further proceedings.
Upon remand, a bench trial was scheduled for December 6, 1996. On that date, counsel for Appellants filed a motion for leave to file an answer to the amended complaint. The motion did not set forth any reasons why the answer was late or why the court should grant leave. The trial court denied the motion. At trial, Appellants' counsel orally noted for the record that Appellees never filed a reply to Appellants' counterclaim in the original complaint. Accordingly, Appellants orally requested judgment on this counterclaim. After permitting counsel for both parties to proffer remarks for the record, the trial court took the matter under advisement.
In its Opinion and Judgment entry dated January 27, 1997, the trial court found that by filing an amended complaint, Appellees abandoned the averments contained in their original complaint, which thereby required Appellants to answer the amended complaint. The court also denied Appellants' motion for leave to answer the amended complaint, stating that Appellants offered no proof of excusable neglect which is necessary by rule for leave to be granted. Since Appellants did not answer the amended complaint, the trial court accepted as true the facts as contained within it. Thus, the trial court found in Appellees' favor both on their amended complaint and as to Appellants' original counterclaim. The court declared the old fence line as it existed prior to Appellants' 1992 survey to be the boundary line between the properties.
On February 13, 1997, Appellants filed a timely notice of appeal. Their first assignment of error alleges:
 "THE LOWER COURT ABUSED ITS DISCRETION BY DENYING DEFENDANTS LEAVE TO FILE THEIR ANSWER ON THE GROUNDS THAT DEFENDANTS DID NOT SATISFY RULE 6 (B)(2) 'S EXCUSABLE NEGLECT STANDARD."
Appellants allege that the lower court abused its discretion in denying them leave to file an answer to Appellees' amended complaint. Appellants argue that the decision was based on form rather than substance and thus was devoid of justice and fair play. See, Cottrell v. Ohio State Constr. (1984), 16 Ohio App.3d 362. Appellants suggest that the trial court prejudged the merits of the case and the decision to deny them leave to plead was just a facade to allow for the court to enter its predetermined decision.
Appellants argue that the trial court should have granted them leave to plead to the amended complaint as they met all of the requirements for a finding of excusable neglect under Civ.R. 6 (B)(2) and as enunciated in State ex rel Lindenschmidt v. ButlerCty. Bd. of Commrs. (1995), 72 Ohio St.3d 464, 466.
Civ.R. 6 (B) provides:
 "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rule 50 (B), Rule 59 (B), Rule 59 (D) and Rule 60 (B), except to the extent and under the conditions stated in them."
The showing of excusable neglect is a necessary prelude to filing an answer pursuant to Civ.R. 6 (B)(2). Miller v. Lint
(1980), 62 Ohio St.2d 209, 214. "The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." State exrel Lindenschmidt v. Butler Cty. Bd. of Commrs. at 465.
A trial court's decision under Civ.R. 6 (B)(2) is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of this discretion. State ex relLindenschmidt v. Butler Cty. Bd. of Commrs., supra at 465 citingMiller v. Lint at 213-214. "The term "abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State ex rel Lindenschmidt v. Butler Cty. Bd. ofCommrs., supra at 465 citing Rock v. Cabral (1993), 67 Ohio St.3d 108,112.
In the matter before us, we find no abuse of discretion in the denial of Appellants' motion for leave to answer the amended complaint. In its Opinion and Judgment Entry, the trial court pointed to the October 6, 1993, agreed judgment entry of the parties which not only granted Appellees leave to file an amended complaint, but also granted Appellants leave to answer this amended complaint. (Judgment Entry, 10.) The court also noted that Appellants made no effort to answer the amended complaint until 9:00 a.m. on the day of trial. (Judgment Entry, 10.) The trial court emphasized that the fact that Appellants' counsel appeared at trial with a prepared motion confirms counsel's awareness of the procedural defect. (Judgment Entry, 11.) The trial court also entertained Appellants' argument that their previous trial counsel was to blame for their failure to answer the amended complaint. The court placed great weight on the fact that Appellants' new counsel had represented Appellants' and controlled the record for twenty months prior to trial; ample time to address the procedural defect. (Judgment Entry, 11-12.)
The trial court noted that where possible, cases should be determined on merits rather than on procedural grounds. (Judgment Entry, 8); See, State ex rel Lindenschmidt v. Butler Cty. Bd. ofCommrs., at 466. However, the court relied on an equally applicable tenet set forth by the Ohio Supreme Court:
 "However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment."
Miller v. Lint at 215.
In light of the record before us, we find no unreasonable, arbitrary or unconscionable action in the court's denial of Appellants' motion and therefore no abuse of discretion. State exrel Lindenschmidt v. Butler Cty. Bd. of Commrs., supra at 465. Appellants' first assignment of error is without merit.
Appellants' second assignment of error alleges:
 "THE LOWER COURT ERRED BY PROHIBITING DEFENDANTS FROM ESTABLISHING 'EXCUSABLE NEGLECT' ORALLY."
Appellants essentially argue that the court should have permitted them to establish "excusable neglect" orally at the trial to satisfy the requirements of Civ.R. 6 (B)(2).
As we stated in earlier, a trial court's decision under Civ.R. 6 (B)(2) is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion.State ex rel Lindenschmidt v. Butler Cty. Bd. of Commrs., supra
at 465. Although Civ.R. 7 (B) provides that a motion may be made orally and implies the use of oral hearing, the Civil Rules do not mandate an oral hearing on a motion.
Having reviewed the record, we find that the court did not abuse its discretion with respect to the second assignment of error. As earlier discussed, the record reveals that Appellants did not file a motion for leave to plead under Civ.R. 6 (B)(2) and did not attempt to file an answer until the morning of trial. Civ.R. (6)(D) requires that written motions be served not later than seven days prior to the time of hearing. Furthermore, the form of Appellants' motion for leave to plead disregarded the requirements of Civ.R. 7 (B)(1) which provides in relevant part that a motion, "* * * whether written or oral, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." In their motion, Appellants stated no grounds for relief and did not attach any supporting memoranda or affidavits. At trial, Appellants' oral motion was not in compliance with Civ.R. 7 (B)(1). The requirements of Civ.R. 7 (B)(1) are, "* * * intended to be a matter of form but [are] real and substantial." Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,114. A request to the court which does not conform to Civ.R. 7 (B)(1) is technically not a motion under the rules. Maryhew v.Yova (1984), 11 Ohio St.3d 154, 158.
Notwithstanding the defects of Appellants' "motion," we also note that the trial court afforded Appellants' counsel the opportunity to proffer onto the record, "* * * anything you want to." (Tr. 8.) Counsel did enter statements into the record to attempt to establish grounds for his neglect. While not quite the "hearing" counsel may have sought on the matter, the opportunity to proffer evidence into the record was clearly an opportunity for Appellants to establish "excusable neglect" if it existed. They failed to do so.
Based on the record before us, we find that the trial court did not act in an unreasonable, arbitrary or unconscionable manner; therefore, we find no abuse of discretion regarding Appellants' second assignment of error and we therefore determine that this assignment of error is without merit.
Appellants' third assignment of error alleges:
 "THE LOWER COURT ERRED IN DENYING JUDGMENT TO DEFENDANTS ON THE COUNTERCLAIM FOR PLAINTIFFS' FAILURE TO ANSWER, WHILE GRANTING JUDGMENT TO PLAINTIFFS ON THE AMENDED COMPLAINT FOR DEFENDANTS' FAILURE TO ANSWER."
Appellants argue that the trial court erred in finding their failure to file an answer to the amended complaint constituted an admission to all of the allegations contained within the complaint, while the Appellees' failure to file an answer to the counterclaim contained within the answer to the original complaint did not constitute an admission to the allegations contained within this counterclaim. Appellants specifically take issue with the trial court's reasoning that a counterclaim is not a pleading under Civ.R. 7 (A) and need not be answered if controverted by the allegations of the complaint.
The trial court did state in its Judgment Entry at page 15 that a counterclaim is not a "pleading" as defined in Civ.R. 7 (A) and therefore, no "responsive pleading" is required pursuant to Civ.R. 8 (D). The trial court relied on Ohio Fair PlanUnderwriting Assn. v. Reese (1984), 17 Ohio App.3d 54, 56-57 in its finding that a plaintiff's failure to respond to a counterclaim does not entitle a defendant to judgment where the very nature of the complaint controverts the allegations of the counterclaim. In the present case, the trial court found that the allegations within Appellees' amended complaint controverted the allegations in Appellants' counterclaim. (Judgment Entry, 16.)
We disagree with the trial court's rationale that a responsive pleading to a counterclaim is not mandatory. The Civil Rules and relevant commentary plainly indicate that a counterclaim is a pleading and that a reply thereto is mandatory. Civ.R. 8 (A) defines a "pleading" not only as an original claim for relief, but expressly as a "counterclaim". Civ.R. 7 (A) then provides in part that, "[t]here shall be * * * a reply to a counterclaim denominated as such * * *" (Emphasis added.) See, Staff Note 2 of the commentary to Civ.R. 7 (A) which provides that a plaintiff "must" file a reply to a counterclaim denominated as such. Thus, a counterclaim is a pleading which mandates a responsive pleading.
Civ.R. 8 (D) provides in part that, "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading * * *" According to Staff Note 4 of the commentary to Civ.R. 55, a plaintiff who fails to serve a reply to a counterclaim is in default for failure to plead and is subject to default judgment. From the foregoing, we find that the trial court erred in its interpretation of the rules.
The trial court also erred in its reliance on Ohio Fair PlanUnderwriting Assn. v. Reese, supra. In Ohio Fair Plan, the appellee had asserted in his complaint that an insurance policy was void while the appellant asserted by counterclaim that the policy was enforceable. The counterclaim was never answered. The Court of Appeals for Cuyahoga County held that, "[a]lthough a technical error was made when [the appellee] failed to file an answer to the counterclaim, there was no error in failing to grant [the appellant] judgment on the counterclaim. The very nature of the complaint controverted the allegations of the counterclaim." That is, while procedurally the appellant could ask for default judgment, because the claims in the complaint ran contra to or "answered" those contained within the counterclaim, judgment was not proper as a matter of law.
The law of Ohio Fair Plan actually contradicts the trial court's finding that a counterclaim is not a pleading to which a response is required. By stating that it was "technical error" for the plaintiff not to answer the counterclaim, the Ohio FairPlan court recognized that an answer to the counterclaim was required. The trial court therefore relied on inconsistent bases to reach the same end. Reliance on Ohio Fair Plan was harmless error, however, as we have already found that the lower court erroneously interpreted the Civil Rules and that an answer to a counterclaim is required by rule.
At this juncture, it is important to note that the trial court had before it a procedural dichotomy. On the one hand, he had the Appellees, who had failed to answer Appellants' counterclaim to their original complaint but had requested and been granted the right to file an amended complaint. Appellants had not requested judgment on their unanswered counterclaim by the time of filing of the amended complaint or at any time prior to trial. To further complicate matters, Appellant failed to answer this amended complaint and thus did not raise the counterclaim again by means of such answer, as explicitly intended and set out by the October 6, 1993, Agreed Judgment Entry.
While we have concluded that the trial court improperly interpreted the rules and the case law, we must determine the effect of the trial court's failure to accept as admitted the factual allegations of the counterclaim, if any, in light of the multiplicity of the parties' procedural error before the court.
Because Appellants were not entitled to file their answer twenty months late on the morning of trial, the trial court correctly relied on Civ.R. 8 (D) to treat the allegations of the amended complaint as admitted, obviating the need to prove such facts. Consequently, the court found from this complaint and the record which was established at trial that Appellees and the predecessors in title to all properties altered the recorded property line and occupied and improved the land according to this altered boundary for a period of roughly thirty years. Because the court found that this alteration of the physical property boundaries was open and agreed, the court held that the line as demarcated by the original fence line was the property division under a theory of acquiescence and/or estoppel. (Tr. 16-19). See, Bobo v. Richmond (1874), 25 Ohio St. 115, 122.
As earlier discussed, the trial court did not consider the facts as they were averred in the unanswered counterclaim to the original complaint. The court properly refused to grant default on this counterclaim to Appellants, first, because default was not sought by them until the morning of trial and secondly and most importantly, because Appellants were required in the Agreed Judgment Entry of October 6, 1993, to file an answer to the amended complaint and a renewed counterclaim. From this, we can see that the court ordered an entirely new answer and counterclaim and treated the original counterclaim as a nullity. Because a new filing was ordered and expected, a careful reading of this Judgment Entry absolved Appellees of the responsibility of filing an answer to the original counterclaim as Appellants were to file a new one. If Appellants intended to rely on their original counterclaim, the time to raise this or protest to the court was at the time of the October, 1993 Judgment Entry, not over three years later the morning of trial.
Even assuming arguendo that the trial court was required to accept the averments in Appellants' counterclaim as admitted by Appellees, consideration of those facts does not result in relief for Appellants. Instead, admission of these facts would actually be detrimental to Appellants' cause. This is true because, in an apparent attempt to refute Appellees' claims that the property lines had been consensually changed, Appellants claim that the boundary was moved without the permission of Appellants' predecessor in title. In so doing, Appellants actually establish adverse possession in Appellees.
In order to establish adverse possession a plaintiff must demonstrate by clear and convincing evidence that possession was exclusive, notorious, continuous and adverse for a period of at least twenty-one years. Grace v. Koch (1998), 81 Ohio St.3d 577,580-581. In claiming by way of their counterclaim that the property line was established at the old fence line without permission of their predecessor in title, Appellants essentially admit that the encroachment of the fence and barn across the recorded property line for the thirty or so years the fence was in place was open and notorious, certainly exclusive to Appellees and, if their allegations are to be taken at face values, adverse. The trial court could easily have found, upon consideration of the facts within Appellants' counterclaim to the original complaint, Appellees were entitled to the land under the theory of adverse possession.
Of course, the trial court found that the parties and their predecessors had altered the recorded property line by agreement. This theory of recovery is inconsistent with that of adverse possession. A review of the counterclaim to the original complaint and the amended complaint reveals that the one fact which differs between the two filings is whether Appellees and the parties' predecessors agreed to the change in property line. No matter which theory is used, however, Appellants cannot prevail and the property line remains where the trial court ordered it to be reestablished: at the old fence line as it existed prior to Appellants' purchase in 1992.
Thus, while the trial court erred in holding that no answer need be filed to a counterclaim, such error was harmless because of the October 6, 1993, Judgment Entry. The counterclaim was specifically not considered by the court in reaching its decision because Appellants failed to file an answer to the amended complaint and renewed counterclaim as ordered by the trial court, thus, the court was free to find in favor of Appellees on the one fact in "dispute"; whether the boundaries were changed by agreement. If so, Appellees are entitled to judgment under a theory of acquiescence and/or estoppel. If not, Appellees are entitled to judgment under a theory of adverse possession. The most Appellants stood to gain by default judgment on their null counterclaim was a loss, but under a conflicting theory. Nevertheless, they did not properly file an answer and renewed or second counterclaim to the amended complaint and have admitted, by operation of law, all of the allegations averred by Appellees in their amended complaint. For these reasons, Appellants' third assignment of error is not well taken.
Appellants' fourth assignment of error alleges:
 "THE LOWER COURT ERRED BY GRANTING DEFAULT JUDGMENT CONTRARY TO RULE 55 (A)."
The record reflects that the trial court did not enter default judgment against Appellants. Rather, the lower court found that the case was submitted on the record as it existed due to the defects in pleading.
Appellants' failure to answer Appellees' amended complaint resulted in the admission of the averments therein. Civ.R. 15 (A); Civ.R. 8 (D). There is ample authority for the proposition that, "* * * according to the law of pleading, an admission in a pleading dispenses with proof and is equivalent to proof of the fact." J. Miller Express, Inc. v. Pent (1995), 107 Ohio App.3d 44,48; Rhode v. Akron (1988), 61 Ohio App.3d 725, 727. When facts are admitted, the failure to conduct an evidentiary hearing is not error. See, Farmers Merchants State Savings Bank v.Raymond G. Bar Eat., Inc. (1982), 6 Ohio App.3d 43, 45. Therefore, this assignment of error lacks merit.
Appellants' fifth assignment of error alleges:
 "THE LOWER COURT ERRED BY GRANTING JUDGMENT ON 'THE SUBSTANTIAL ISSUES' AS A MATTER OF LAW, WHEN ALL THE MATERIAL FACTS OF THE CASE WERE IN HOT DISPUTE."
Appellants' argue that they did not admit the allegations of the amended complaint. Rather, they assert that they have denied or contested those averments at every stage of the proceedings below including in interrogatories, by answering to the original complaint, in their trial memorandum and in their motion for relief under Civ.R. 60 (B).
It is abundantly clear in the Civil Rules that a defendant's failure to answer an amended complaint results in the admission by default of the allegations contained therein. Civ.R. 15 (A); Civ.R. 8 (D). Such an admission dispenses with the need to prove the facts alleged in the pleading. J. Miller Express, Inc. v.Pentz, supra at 48; Rhoden v. Akron, supra 727. Notwithstanding Appellants' earlier failed argument that the trial court should have considered the allegations of their counterclaim as admitted, as we discussed above, this would have resulted in leaving only one fact in dispute and would not have changed the final disposition in this matter even if allowed. Therefore, this assignment of error lacks merit.
For all of the foregoing, we hold that the assignments of error are not well taken and we hereby affirm the judgment of the trial court.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________ CHERYL L. WAITE, JUDGE